```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THUY LE,

            Plaintiff,

     v.                                      18 CV 7709 (ER)

MACY'S, INC., ET AL.,

            Defendants.

------------------------------x
                                          New York, N.Y.
                                          December 19, 2018
                                          3:00 p.m.
Before:

                    HON. EDGARDO RAMOS,

                                          District Judge

                         APPEARANCES

LAW OFFICE OF LAURIE E. MORRISON
     Attorneys for Plaintiff Le
BY:  LAURIE E. MORRISON

SCHOEMAN UPDIKE & KAUFMAN & GERBER, LLP
     Attorneys for Defendant Macy's
BY:  DAVID H. GANZ
```

ICJAALEC                        Conference

1             (Case called)
2             MS. MORRISON:  Good afternoon.
3             Laurie Morrison, appearing on behalf of the plaintiff
4    Thuy Le.
5             THE COURT:  Good afternoon.
6             MR. GANZ:  David Ganz, for the Macy's defendants.
7             THE COURT:  And good afternoon to you.
8             This matter is on for premotion conference.  However,
9    I do believe that this is the first time that the parts have
10   appeared before me.
11            So, Ms. Morrison, let me begin with you.  Tell me a
12   little bit about your case and please as you speak please make
13   sure that you keep your voice up and that you speak slowly and
14   clearly.  OK?
15            MS. MORRISON:  OK.  Thank you, your Honor.  I have a
16   bit of a cold I am going to try my best.
17            OK.  So Thuy Le was hired by defendants and
18   essentially, this is a race discrimination ethnic racial
19   discrimination and retaliation case.  Plaintiff Thuy Le is of
20   Vietnamese and Guyanese descent.  She was born in China but
21   moved to United States in 1989.  She is an American citizen as
22   of on or around 2003.
23            Defendant company hired Ms. Le in March of 2015.  She
24   was hired to work as a store manager in the company's Chelsea,
25   New York location.  She maintained good work performance record

1   and she received a regional management position earning a

2   salary of approximately 50K, not including bonuses which were

3   approximately monthly bonuses of averaging of about (inaudible)

4   dollars.

5           In 2015 from on or around June to November 2015

6   defendant companies were aware that there were diverters

7   frequenting the store locations.  Those are people who buy

8   large amounts of product such as cosmetics skincare and then

9   they resell those products at higher prices for a profit.

10          Diverters were also known to use fraudulent credit

11  cards at defendant companies' stores.  Now there are many

12  different types of diverters.  There wasn't just one ethnicity

13  or one race, unfortunately, included like Ms. Le.  She was

14  targeted.  She was told that diverters are Asian.  Lookout for

15  them.  She was actually accused of being a diverter because

16  she's Asian.

17          She also heard, she was present on teleconferences

18  with not just Bluemercury people but people who also worked in

19  the corporate offices both for Bluemercury and Macy's entities

20  through Bluemercury, a standard subsidiary of Macy's.  They

21  will have people or managers, supervisors what have you,

22  working in different ones of their subsidiaries and other

23  areas.

24          So for example, on one of these calls the plaintiff

25  was present on.  One of the defendant's corporate offices were

1   included on the call, so one of the main supervisors and this
2   person --
3            THE COURT:  This person did what?
4            MS. MORRISON:  Stated:  "All diverters are all
5   Asians", more than two times.
6            THE COURT:  OK.
7            MS. MORRISON:  And these supervisors including the
8   ones who are in the conference call didn't mention diverters
9   being of any other entities, races or national origin, only
10  Asians.  Even though staff members including experienced
11  diverters of other races and ethnicities and national origins
12  including Brazilians, Africans, Italians, Eastern Europeans.
13           On or around January 2016 defendant Dewine called
14  Ms. Le to the Chelsea location and she stated to Ms. Le that
15  Asian clients can be avoided because they're the only diverters
16  coming into Bluemercury.  Plaintiff complained to defendant
17  Dewine what her comments and instructions were racist and
18  discriminatory.  Ms. Le also requested that defendant Dewine
19  stop the comments and discriminatory instruction.
20           On or around February of 2016, Ms. Dewine called
21  Ms. Le into the store and accused her of having something to do
22  with being diverters simply because Ms. Le is Asian.  Ms. Le
23  asked defendant Dewine directly if her question, directed her
24  question at Ms. Le because Ms. Le is Asian.  And defendant
25  Le -- Dewine confirmed responding that it all seemed shady.

1           After Ms. Le's complaints she was then suddenly
2   targeted many different, in many different areas.  There is
3   rampant credit card fraud going on in the Macy's entity and
4   going on in Bluemercury. Defendant Fisher who worked for
5   defendant companies stated Thuy Le knows about the credit card
6   fraud.  Apparently claiming that she had something to do with
7   credit card fraud now.  And the targeting continued.
8           So the targeting continued in many different ways
9   giving Ms. Le disciplinary writeups and claiming that she did
10  conduct that actually other employees did.  Also claiming that
11  her company, that her particular store location didn't do the
12  chargebacks that they were supposed to do chargebacks, would
13  have paperwork to show that Ms. Le requested any sorts of
14  paperwork.  She was always denied and -- proof.
15          Defendant Dewine also began to excessively scrutinize.
16  Ms. Dewine also began to excessively scrutinize Ms. Le's work
17  performance.  For example, district managers performed store
18  assessments where they check on the stores or cleanliness,
19  protocol, merchandising, et cetera.  The managers typically
20  complete the store assessments in the morning before the
21  customers arrive and the busy workday begins.  As your Honor
22  can imagine, if your going to check the cleanliness of a
23  store's organization, you don't do it at the end of the day
24  when there have been thousands of people in the store messing
25  the store up.  That's why it normally occurs in the morning.

1   But not in Ms. Le's case.  Dewine would arrive at the store at
2   approximately five p.m. to assess Ms. Le's store right at the
3   busy rush hour.
4           Defendant Dewine and other defendants also gave Ms. Le
5   a store an almost failing grade claiming that minor things like
6   dust on store panels and fingerprints on mirrors when they
7   checked the store it was at the five o'clock rush hour.  So
8   these kinds of harassments continues, not only by defendant
9   Dewine but defendant Rodriguez who was one of the defendant
10  companies' regional managers.
11          Ms. Le was then transferred, denied a bonus and her
12  pay was reduced.  And then once she was transferred to another
13  store the manager who took over the store that she had been in
14  received higher pay.
15          And then afterwards they essentially fired Ms. Le
16  after she again complained, for example, the complaints also
17  allege on line 206, Ms. Le told defendant Dewine that manager
18  Dugan's conduct was discriminatory.  Again, the managers were
19  basically teaming up and discriminating against her after her
20  retaliating against plaintiff after her complaints.  The
21  defendants told Ms. Le, you'd should think about your next
22  moves.  They also warned her think about what you really want
23  to do.  And defendants promptly told Ms. Lee she needs to
24  resign otherwise she's going to be fired.
25          THE COURT:  Okay.

1    MS. MORRISON:  Essentially, that's what occurred.
2    There are several more things that occurred but that's just --
3    THE COURT:  That's fine.  Thank you.
4    Mr. Ganz.
5    MR. GANZ:  Afternoon, your Honor.
6    Given the length of the complaint it's a 20 count, 55
7    plus page, 490 paragraph complaint.  We had requested and the
8    Court had given us some additional time to do some
9    investigation about the specific allegations.  The point of,
10   one of the points that we brought to the Court's attention in
11   the letter requesting this conference was that, number one, it
12   was not clear whether plaintiff is trying to assert a single
13   employer theory or a joint employer.  But whichever it is
14   there's no factual predicate anywhere in those 55 plus pages.
15   Plaintiff simply lumps four defendants, four corporate
16   defendants together and just simply refers to them as
17   "defendant employers".  Even in counsel's presentation this
18   afternoon just refers to everybody as "defendants".
19   And although she says that discovery is needed and
20   that defendants, the response to our letter requesting the
21   promotion conference is that it's premature, discovery is
22   needed, she cites a number of cases having to do with summary
23   judgment which is not applicable here.  And if that were the
24   standard then no motion to dismiss would ever be granted on a
25   single employer/joint employer theory because the plaintiff

1  could always say, well, it's premature.  That's what discovery
2  is for and that's not the law in this circuit.
3           Plaintiff has to have some factual predicate as to why
4  a particular entity is considered her employer and she doesn't
5  do that.  Other than and again, grouping everyone together as
6  the employers who are the defendant companies, there is no
7  factual predicate.  There's no discussion, no allegations about
8  interrelationship of operations, centralized controlled labor
9  relations, common management, common ownership or financial
10 control, commonality of hiring, firing, discipline, pay
11 insurance records, supervision.  It is just simply not in the
12 complaint.
13          And when there are no such allegations those kinds of
14 motions are brought and they're granted and we've cited a
15 number of them.  There were 12(b) motions in our letter to the
16 Court.  In each one of those cases the Court granted the motion
17 to dismiss because the complaint was devoid of any factual
18 allegations as to why a particular defendant or defendants
19 should be considered the plaintiff's employer.
20          THE COURT:  OK.  Ms. Morrison.
21          MS. MORRISON:  I apologize.  I thought Mr. Ganz was
22 finished.
23          Mr. Ganz made several statements that are factually
24 inaccurate.  Let me start with the first.  All of the issues
25 that defendant Ganz claims have to be in a complaint, violate

the Supreme Court and violate the Second Circuit. Everything that he is talking about, the interrelation between the businesses, the interconnection between how they pay the different employees and how they behave, all of that information is solely within the employer's control, all of it. Employees do not have access to any of that information. That's what discovery is for.

And Mr. Ganz requiring when the Supreme Court doesn't require that there's such a heightened pleading standard is simply not the case. All of the cases that Mr. Ganz cites and Mr. Ganz even said today that there are no allegations, whatsoever, stating that anyone from Macy's did anything wrong. Well, that's incorrect. Plaintiff even points out several of such allegations within the complaint in my response. For instance, defendant Rodriguez was one of defendant companies' regional managers, not just Bluemercury. And there are several complaints against defendant Rodriguez specifically citing what she has done.

THE COURT: What about the group pleading issue?

MS. MORRISON: Well, the group pleading issue is actually not applicable in this case. When you have such employers who are interrelated as Macy's is, the Macy's as I stated in the beginning at the outset, has several subsidiaries. All of them are still under the control of Macy's, particularly, when they have supervisors such as

1   Rodriguez and other supervisors who control staff members in
2   subsidiary stores and in the Macy's stores.
3              So then in that sort of case when you have defendants
4   of an individual supervisors who work for all the entities then
5   it absolutely make sense to say defendants did this and
6   defendants did that because the fact members of defendants were
7   the ones who were doing this conduct.
8              What Mr. Ganz is talking about is something entirely
9   different where you have in this case is cited where you have
10  completely non-related entities who have nothing to do with
11  each other and there's no allegation, whatsoever, in the
12  complaint itself that any of the staff members ever worked for
13  anybody other than just one of them.  That's not the case here.
14             We've specifically cited in the complaint several
15  individuals who worked for different entities.  We've also
16  cited that like I talked about earlier, your Honor,
17  teleconference with defendant corporate offices where people
18  within the corporate offices were making these discriminatory
19  comments.
20             The complaint also cites that defendant entities have
21  their policies.  It is the same policy.  And that's why it
22  makes sense also to add defendant's policy states this because
23  it's the same policy as dictated by the main entity Macy's.
24  But beyond that there's no greater pleadings requirement.  And
25  if it were the case that employees were in charge of having to

1    know and to cite specifically within the complaint the

2    interrelation of each and every entity, then there would never

3    be complaints alleging more than one employer.

4            THE COURT:  Let me ask you this.  What was Ms. Le's

5    position?

6            MS. MORRISON:  Ms. Le's position was a store manager.

7            THE COURT:  She was a manager of an entire store?

8            MS. MORRISON:  Well, she was one of the store

9    managers, correct.

10           THE COURT:  OK.  So she would have had some additional

11   information concerning her employer and to the extent that

12   there was a corporate family, she would have had some

13   information about that, correct?

14           MS. MORRISON:  Not necessarily, your Honor.  We're

15   talking about store managers who are not privy to such meetings

16   as, for instance, the corporate bylaws; for instance, meetings

17   where you have the head regional officers of each region of

18   each store meeting.  She wasn't that high up.

19           THE COURT:  In other words, there's nothing in

20   Mr. Ganz's letter that suggests to you that there should be any

21   sort of amendment or any additional information in the

22   complaint that's been filed?

23           MS. MORRISON:  From what Mr. Ganz is citing, the

24   information that he requires and that he demands be in the

25   complaint is not required by the Supreme Court.  Now if

1  Mr. Ganz would like to provide discovery because plaintiff is
2  absolutely open to having additional discovery, just short
3  discovery regarding the issue of involvement of Macy's and the
4  entities and what have you, then you have to do that in order
5  to amend the complaint, if necessary.  But the Supreme Court
6  does not require and nor does the Second Circuit require a
7  heightened pleading standard as citing the interrelation of the
8  high levels relations that only the companies themselves, the
9  CSO, high regional managers would know.
10             THE COURT:  OK.  Mr. Ganz?
11             MR. GANZ:  Your Honor, I go back to what I said
12 earlier which is that I'm not requiring something that the
13 Supreme Court doesn't.  I am looking at the case law in the
14 Second Circuit on motions to dismiss involving complaints,
15 employment related complaints that are brought against multiple
16 defendants, under either a single employer or joint employer
17 theory.
18             And there is decision after decision that says what
19 the complaint must do.  And if you just, just by one example
20 the Apolinar case, the Court said:
21             Merely reciting the element of the joint employer
22 arrangement which is primarily what plaintiffs do here, is
23 insufficient to plausibly allege joint employer status.
24             So I am not requiring anything, your Honor.  I am
25 looking to what the courts in this circuit have said when we

1    have a complaint such as this one that alleges joint
2    responsibility because again, it's not even clear from the
3    pleading whether she's claiming this is a single employer or
4    joint employer status.
5              THE COURT:  OK.  So when do you want --
6              MS. MORRISON:  Your Honor, I'm sorry.  May I just
7    state again, it's just not true.  Here we have, there are
8    several, again, the factual allegations alone, not the legal
9    areas, the factual allegations alone are all almost three
10   hundred lines of factual information.  And in line 16 which
11   again, defense counsel claims that he doesn't know whether
12   they're saying -- there is --
13             THE COURT:  You need to, Ms. Morrison, speak up, slow
14   down and start again.  What's line 16?
15             MS. MORRISON:  Line 16, contrary to defendant's claim
16   states plaintiff seeks --
17             THE COURT:  I'm sorry.  I'm asking a question.  What
18   is line 16, a line in -- what is that, a paragraph number?
19   What is that?
20             MS. MORRISON:  Line 16 of the complaint, your Honor.
21             THE COURT:  There's a' line?
22             MS. MORRISON:  Paragraph 16.  Sometimes we call it
23   "line 16".  Sometimes we call it "paragraph 16".
24             THE COURT:  I've never called it "line".  What's
25   paragraph 16?

1     MS. MORRISON: Paragraph 16 states plaintiff seeks to
2  hold defendants liable under vicarious legal doctrines
3  including without limitations, vicarious liability -- superior,
4  aiding and abetting and other grounds.
5     So again, it's clear that she is holding complaints
6  against all the defendants and was also stated in the
7  complaints and as I state at the outset, she is stating that
8  individual employees and supervisors of not just the
9  Bluemercury entity but also of Macy's entity discriminated
10  against her.
11     THE COURT: OK. I got it. So Mr. Ganz, when do you
12  want to make your motion?
13     MS. MORRISON: Your Honor, would it be OK if, it would
14  be the thinking Friday the week after, the week of the first?
15  I think the first is a Tuesday.
16     THE COURT: That's fine. The first Friday of January?
17     MS. MORRISON: The second --
18     THE COURT: The second Friday of January. OK.
19     Ms. Morrison to respond?
20     How many weeks that, Mr. Ganz?
21     MS. MORRISON: From today?
22     THE COURT: Yes.
23     COURTROOM DEPUTY: Three.
24     THE COURT: Ms. Morrison, three weeks to respond?
25     MS. MORRISON: Yes, your Honor. But, your Honor, if

ICJAALEC                        Conference

1   plaintiff may request is it possible for the parties to have
2   some discovery on the matter --
3            THE COURT:  No.
4            MS. MORRISON:  OK.  And one week to reply.  So let's
5   get you those actual dates.
6            COURTROOM DEPUTY:  The motion is due January 11, 2019.
7   The response is due February 5, 2019.  And the reply is due
8   February 1, 2019.
9            THE COURT:  OK.  Everyone have those dates?
10           MS. MORRISON:  Thank you, your Honor.
11           THE COURT:  OK.  We're adjourned.
12           (Adjourned)
13
14
15
16
17
18
19
20
21
22
23
24
25